IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM DEFELICE, et al.,
Individually, and on behalf of all
others similarly situated,

        Plaintiffs,

vs.

EASTERN SHIPBUILDING GROUP,
INC., a Florida profit corporation,

        Defendant.
_____/

CASE NO.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs William Defelice, Jorge Gonzalez, Jason M. Rule, Taylor Sanders, Lott Warren Middlemas IV, Caleb Daniel, Victor R. Stillgess Jr., and Heather Dunn (collectively, "Plaintiffs"), by and through undersigned counsel, bring this action on their own and on behalf of those similarly situated against Eastern Shipbuilding Group, Inc., a Florida profit corporation ("ESG" or "Defendant") and allege as follows:

**NATURE OF ACTION**

1. This is a Class Action Complaint filed pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq. (the "WARN Act").

2. Plaintiffs are former employees of ESG who were terminated from employment in connection with ESG's United States Coast Guard

Offshore Patrol Cutter ("OPC") program, where ESG was responsible for constructing naval vessels. Plaintiffs bring this action to recover damages for themselves, and on behalf of the proposed Class of similarly situated former employees.

3. ESG is liable under the WARN Act for failing to provide Plaintiffs and the proposed Class with the 60 days' advance notice mandated by law prior to their terminations.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Bay County, Florida, where ESG operates the shipyard facilities at issue in this case.

## PARTIES

6. Defendant Eastern Shipbuilding Group, Inc. ("ESG") is a Florida for-profit corporation with principal administrative offices located at 1001 E. Highway 98, Panama City, Florida 32401.

7. At all times relevant, ESG was authorized to conduct business in the State of Florida and did conduct business in Florida.

8. At all times relevant, ESG maintained shipyard facilities in Panama City, Florida, including shipyards known as Allanton shipyard and Nelson Street shipyard (together, the "Eastern Gulf Coast Shipyards").

9. At all times relevant, ESG operated the Eastern Gulf Coast Shipyards as an integrated shipbuilding complex devoted to building vessels under the OPC program for the United States Coast Guard.

10. At all times relevant, ESG was an "employer" within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(1), in that ESG employed one hundred or more employees, exclusive of part-time employees, or one hundred or more employees who in the aggregate worked at least 4,000 hours per week, exclusive of overtime.

11. Plaintiff William Defelice is a resident of Bay County, Florida. He was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

12. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

13. Plaintiff Jorge Gonzalez is a resident of Bay County, Florida. He was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

3

14. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

15. Plaintiff Jason M. Rule is a resident of Bay County, Florida. He was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

16. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

17. Plaintiff Taylor Sanders is a resident of Bay County, Florida. She was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

18. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

19. Plaintiff Lott Warren Middlemas IV is a resident of Bay County, Florida. He was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

20. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

21. Plaintiff Caleb Daniel is a resident of Bay County, Florida. He was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

22. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

23. Plaintiff Victor R. Stillgess Jr. is a resident of Bay County, Florida. He was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

24. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

25. Plaintiff Heather Dunn is a resident of Bay County, Florida. She was employed by ESG at the Eastern Gulf Coast Shipyards and was assigned primarily to work on the OPC program.

26. At all times relevant, Plaintiff was an "employee" of ESG within the meaning of 29 U.S.C. § 2101(a)(6)–(8) and was not a "part-time" employee.

## FACTUAL ALLEGATIONS

27. ESG is a commercial shipbuilding company that contracts with governmental entities to build offshore vessels.

28. On September 15, 2016, the Coast Guard awarded ESG the contract for The Offshore Patrol Cutter ("OPC") program.

29. The Offshore Patrol Cutter ("OPC") program is the United States Coast Guard's highest investment priority for recapitalizing its aging offshore vessel fleet and was intended to provide the majority of the Coast Guard's offshore presence.

30. ESG's own economic-impact publications projected that OPC-related spending would support thousands of jobs from 2016 through at least 2035.

31. Local media repeatedly described the OPC contract as the largest contract in Coast Guard history and ESG as one of the largest private employers in Northwest Florida.

32. On June 5, 2025, during a hearing of the House Subcommittee on Coast Guard and Maritime Transportation, Admiral Lunday testified that Eastern Shipbuilding Group had indicated it could not carry out the OPC contract without taking an "unabsorbable loss," begun exploring transfer of that work to other contractors.

33. Admiral Lunday also testified that Vessel 1 under the OPC program was only approximately 72 percent complete and that delivery by the then-current end-of-2025 schedule was "in doubt," publicly signaling

severe performance issues with ESG's ability to fully meet its obligations under the contract.

34. On July 11, 2025, The Department of Homeland Security ("DHS") publicly announced that it was partially terminating ESG's OPC contract because of ESG's failure to meet delivery obligations.

35. DHS noted that Vessel 1's delivery was delayed by years, Vessel 2 was overdue, and work on vessel 3 and 4 were halted after ESG said fulfilling the contract would result in an unmanageable loss.

36. On or about July 15, 2025, local media further reported that ESG would now complete only two vessels under the OPC program instead of four.

37. By mid-July 2025, ESG was on clear public notice that (a) half of its remaining OPC Vessel work at Panama City had been eliminated, (b) work on the other hulls was already stopped or at serious risk, and (c) the government viewed ESG's performance as wasteful and unacceptably delayed.

38. On or about November 15, 2025, ESG terminated Plaintiffs, while assigned to the OPC program, was discharged by ESG without cause and without 60 days' notice.

39. During that same period, ESG terminated the employment of approximately fifty or more other OPC program employees at the

Nelson Street facility and Allanton facility, without cause on their part, or 60 days' notice, as part of a mass layoff and/or plant closing.

40. Any contention that the November 2025 mass layoff or plant closing resulted from "unforeseeable business circumstances" is contradicted by the public record and is without merit, because the key contract problems and partial termination were known and documented well in advance.

41. ESG had months of actual and constructive notice of the impending reduction in OPC work, and failed to provide the WARN-required 60 days' written notice to Plaintiffs and the OPC Program Employees.

42. These terminations resulted in an "employment loss" for more than 50 full-time employees within a 30-day period, constituting a "plant closing" and/or "mass layoff" as defined by 29 U.S.C. § 2101(a)(2)–(3).

43. To the extent any written notice was provided to Plaintiffs or Class Members, such notice was first given on or about the same day that ESG carried out the mass layoff, and not 60 days in advance.

44. ESG did not provide written notice to the State or local government entities designated to receive WARN notices within the applicable time period, as required by 29 U.S.C. § 2102(a)(2).

45. ESG's failure to provide the required advance notice had a severe and immediate financial impact on Plaintiff and the Class Members, who

suddenly lost their wages, health insurance, retirement contributions, and other benefits.

46. As a result of ESG's violations of the WARN Act, Plaintiff and each Class Member are entitled to recover wages, salary, commissions, bonuses, accrued vacation and personal days, and the value of lost benefits, including medical expenses that would have been covered under ESG's health plan, for up to 60 days following their terminations.

## **CLASS ACTION ALLEGATIONS**

47. Plaintiffs bring this action on behalf of themselves and seek to obtain relief for a class of similarly situated former employees pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

48. Specifically, the class Plaintiffs seek to certify is defined as

> OPC WARN CLASS: All former employees of Eastern Shipbuilding Group, Inc., ("ESG") whose employment was terminated on or about November 2025 as part of ESG's OPC-related plant closing and/or mass layoff at that site of employment, and who did not receive at least 60 days' advance written notice under the WARN Act.

49. The Class is so numerous that joinder of all members is impracticable, as there are approximately 50 or more Class Members.

50. The common questions of law and fact arise from and concern the following facts, among others:

   i. Whether ESG was an "employer" within the meaning of the WARN Act;

   ii. Whether Plaintiffs and the OPC WARN Class members were "employees" and "affected employees" entitled to WARN Act protection;

   iii. Whether the Eastern Gulf Coast Shipyards constituted a single "site of employment" under the WARN Act;

   iv. Whether the OPC program constituted an "operating unit" within that site of employment;

   v. Whether ESG ordered a plant closing and/or mass layoff affecting OPC Program Employees at the site of employment in November 2025;

   vi. Whether ESG provided Plaintiffs and the OPC WARN Class members with at least 60 days' advance written notice of the plant closing and/or mass layoff;

   vii. Whether any WARN exception, including the "unforeseeable business circumstances" exception, applies; and

viii. The proper measure of damages, including back pay and the value of lost benefits, owed to Plaintiffs and the OPC WARN Class members.

51. Plaintiffs' claims are typical of the claims of the other members of the Class because they arise from the same conduct by ESG described above and are based on the same legal theories and statutory rights under the WARN Act.

52. Plaintiffs will fairly and adequately protect and represent the interests of the Class. Plaintiffs' interests are coextensive with, and not antagonistic to, those of the Class, and Plaintiffs have retained counsel experienced in wage-and-hour and employment class actions.

53. Plaintiffs have the time and resources to prosecute this action.

54. No OPC WARN Class member has a strong interest in individually controlling the prosecution of a separate action under the WARN Act.

55. To Plaintiffs' knowledge, no other litigation concerning the WARN Act rights of any OPC Program Employee terminated in November 2025 has commenced.

56. Concentrating all WARN Act claims of the OPC WARN Class in this Court will avoid a multiplicity of suits, conserve judicial and party resources, and is the most efficient means of resolving the WARN Act rights of all OPC Program Employees in the OPC WARN Class.

57. The names and last-known addresses of the OPC WARN Class members, and the rate of pay and benefits that were being paid or provided by ESG to each OPC WARN Class member at the time of termination, are contained in ESG's books and records.

58. Class certification under Rule 23(b)(3) is appropriate because common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of this controversy.

### COUNT I – VIOLATION OF THE WARN ACT – Plant Closing
(Brought by Plaintiffs themselves and on behalf of the Class)

59. Plaintiffs reallege and incorporate by reference paragraphs 1 through 58 as if fully set forth herein.

60. At all times relevant, ESG was an "employer" within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(1).

61. At all times relevant, Plaintiffs and the OPC WARN Class members were "employees" and "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5)–(8), were OPC Program Employees, and were not "part-time" employees.

62. The Eastern Gulf Coast Shipyards, (Allanton shipyard and Nelson Street shipyard), constituted a single "site of employment" within the meaning of 29 U.S.C. § 2101(a)(2) and 20 C.F.R. § 639.3(i).

63. Within that single site of employment, ESG's OPC program constituted an "operating unit" within the meaning of 29 U.S.C. § 2101(a)(2) and 20 C.F.R. § 639.3(j).

64. On or about November 14–15, 2025, ESG ordered and effected a shutdown of the OPC operating unit at the Eastern Gulf Coast Shipyards (the "Plant Closing").

65. The Plant Closing resulted in an "employment loss," as defined in 29 U.S.C. § 2101(a)(6), for at least 50 full-time OPC Program Employees, excluding part-time employees, at the single site of employment during a thirty-day period or, in the alternative, during an aggregated ninety-day period.

66. The Plant Closing therefore constituted a "plant closing" within the meaning of 29 U.S.C. § 2101(a)(2).

67. The WARN Act required ESG to provide Plaintiffs, the OPC WARN Class members, any representatives of such employees, the State dislocated worker unit, and the chief elected official of the unit of local government with at least 60 days' advance written notice of the Plant Closing. See 29 U.S.C. § 2102(a); 20 C.F.R. § 639.6.

68. ESG failed to provide the required 60 days' advance written notice of the Plant Closing.

69. ESG did not satisfy the "unforeseeable business circumstances" exception or any other exception to the WARN notice requirements and, in any event, failed to provide as much notice as practicable along with a brief statement of the reasons for any reduced notice period, as required by 29 U.S.C. § 2102(b)(3).

70. Plaintiff and the OPC WARN Class members are "aggrieved employees" within the meaning of 29 U.S.C. § 2104(a)(7) and are entitled to the statutory remedies provided therein.

71. ESG's violations of the WARN Act were not in good faith, and ESG lacked reasonable grounds for believing its conduct complied with the statute.

72. As a direct and proximate result of ESG's violation of the WARN Act's plant-closing provisions, Plaintiff and the OPC WARN Class members are entitled to recover from ESG:

   i. Back pay for each day of violation, up to 60 days, calculated at the higher of the average regular rate of pay received by each such employee during the last three years of employment or the final regular rate of pay, pursuant to 29 U.S.C. § 2104(a)(1)(A);

   ii. The cost of benefits under any employee benefit plan, including the cost of medical expenses incurred during the employment-loss

period that would have been covered under such plan, pursuant to 29 U.S.C. § 2104(a)(1)(B); and

iii. Reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 2104(a)(6).

## COUNT II – VIOLATION OF THE WARN ACT – MASS LAYOFF
(Pled in the alternative, brought by Plaintiffs themselves and on behalf of the Class)

73. Plaintiffs reallege and incorporate by reference paragraphs 1 through 58 as if fully set forth herein.

74. At all times relevant, ESG was an "employer" as defined in 29 U.S.C. § 2101(a)(1).

75. At all times relevant, Plaintiffs and the OPC WARN Class members were "employees" and "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5)–(8), were OPC Program Employees, and were not "part-time" employees.

76. Plaintiffs and the OPC WARN Class members are "aggrieved employees" within the meaning of 29 U.S.C. § 2104(a)(7) and are entitled to the statutory remedies provided therein.

77. The Eastern Gulf Coast Shipyards, (Allanton shipyard and Nelson Street shipyard), constituted a single "site of employment" within the meaning of 29 U.S.C. § 2101(a)(3) and 20 C.F.R. § 639.3(i).

78. On or about November 15, 2025, ESG implemented a reduction in force at the Eastern Gulf Coast Shipyards (the "Mass Layoff") that was not limited to the shutdown of a single facility or operating unit, but instead involved a broader termination or layoff of employees at the site, including OPC Program Employees.

79. During the 30-day period beginning on or about November 14, 2025, or, in the alternative, during an aggregated 90-day period, the Mass Layoff resulted in an "employment loss," as defined by 29 U.S.C. § 2101(a)(6), for at least fifty full-time employees at the single site of employment, excluding part-time employees. The majority of those affected employees were OPC Program Employees.

80. The number of full-time employees at the Eastern Gulf Coast Shipyards who experienced an employment loss during that period under the OPC Program, constituted at least 33 percent of the active full-time workforce at that site, excluding part-time employees, or, in the alternative, constituted 500 or more employees, within the meaning of 29 U.S.C. § 2101(a)(3)(B).

81. The terminations or layoffs, therefore constituted a "mass layoff" at a single site of employment within the meaning of 29 U.S.C. § 2101(a)(3).

82. The WARN Act required ESG to provide Plaintiffs, the OPC WARN Class members, any representatives of such employees, the State dislocated worker unit, and the chief elected official of the unit of local government with at least 60 days' advance written notice of the Mass Layoff. *See* 29 U.S.C. § 2102(a); 20 C.F.R. § 639.6.

83. ESG failed to provide Plaintiffs, the OPC WARN Class members, or the appropriate governmental entities with 60 days' advance written notice of the Mass Layoff.

84. ESG did not satisfy the "unforeseeable business circumstances" exception or any other exception to the WARN notice requirements and, in any event, failed to provide as much notice as practicable along with a brief statement of the reasons for any reduced notice period, as required by 29 U.S.C. § 2102(b)(3).

85. As a direct and proximate result of ESG's violation of the WARN Act's plant-closing provisions, Plaintiffs and the OPC WARN Class members are entitled to recover from ESG:

    i. Back pay for each day of violation, up to 60 days, calculated at the higher of the average regular rate of pay received by each such employee during the last three years of employment or the final regular rate of pay, pursuant to 29 U.S.C. § 2104(a)(1)(A);

  ii.    The cost of benefits under any employee benefit plan, including the cost of medical expenses incurred during the employment-loss period that would have been covered under such plan, pursuant to 29 U.S.C. § 2104(a)(1)(B); and

  iii.   Reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 2104(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

i. Certify the Class pursuant to Federal Rule of Civil Procedure 23; appoint Plaintiff William Defelice as class representative; and appoint counsel of record Deron T. Roberson as class counsel;

ii. Declare that ESG violated the WARN Act;

iii. Find that ESG's violations were willful and not in good faith;

iv. Enter judgment in favor of Plaintiffs and the Class for back pay to the fullest extent permitted by 29 U.S.C. § 2104(a)(1)(A);

v. Enter judgment in favor of Plaintiffs and the Class for the value of lost benefits, including medical expenses incurred during the employment loss period, to the fullest extent allowed under 29 U.S.C. § 2104(a)(1)(B);

vi. Award Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 2104(a)(6) and Federal Rule of Civil Procedure 54(d);

vii. Award any applicable civil penalties under 29 U.S.C. § 2104(a)(3);

viii. Award interest as allowed by law on the amounts owed under the preceding paragraphs; and

ix. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury for all issues so triable.

Dated: December 12, 2025

Respectfully submitted,

*/s/ Deron T. Roberson Jr.*
DERON T. ROBERSON, JR.
Florida Bar Number 1011941
AARON C. ROBERSON
Florida Bar Number 1011941
**ROBERSON & ROBERSON P.A.**
Email:  deron@robersonpa.com
aaron@robersonpa.com
info@robersonpa.com
16057 Tampa Palms Blvd. W. #231
Tampa, Florida 33647
Phone:  813.808.3688
*Attorneys for Plaintiffs*